ESSEX STORAGE ELECTRIC COMPANY, INC. *v.* VICTORY LUMBER
COMPANY.

January Term, 1919.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 9, 1919:

*Appeals from Public Service Commission—How Taken—Power
to Extend or Modify Statutory Requirements—Nature of
Appeal in Chancery—Effect of Exceptions—Saving Excep-
tions in Chancery Case—Failure to Brief Exceptions—
Eminent Domain—Measure of Damages—Separate Parcels
of Real Estate Constituting One Enterprise—Burden of
Proof on Owner—Examination of Transcript to Supply
Omissions—Judicial Notice of Lumber Business—Specific
Findings not Necessary—Method of Assessing Damages.*

Under G. L. 5038, 1561, an appeal from the final order of the Public
    Service Commission is taken in the same manner as a chancery ap-
    peal, except that the written motion must be filed with the com-
    mission or its clerk, and not with the clerk of the court.

These provisions being statutory, neither the Public Service Commis-
    sion nor the Supreme Court has any power to extend the time or
    modify their requirements.

Where an order of the Public Service Commission was made and filed
    on June 21st, and the plaintiff filed its appeal with the commis-
    sion's clerk on July 11th, and, on that day, the defendant filed
    an appeal with the county clerk, and on July 12th filed an appeal
    with the commission's clerk, the plaintiff's appeal was timely, but
    the defendant's appeal was too late; July 11th being the last day
    for filing an appeal.

Where the requirements of a valid appeal are statutory, the jurisdic-
    tion of the Supreme Court depends upon a compliance therewith,
    and cannot be conferred by agreement or waiver, express or im-
    plied.

An appeal in chancery partakes of the nature both of an appeal in its
    full and Civil Law sense and of a writ of error, but is unlike the
    former in that it brings up for review questions of law only, and
    is unlike the latter in that it brings up for review the whole case.

An appeal in chancery vacates the decree, and brings up for consideration on review all exceptions properly saved by both parties.

When a bill of exceptions is allowed and filed, the judgment of the court below is not vacated, but remains valid until reversed or annulled; and only the assignments of error of the excepting party are brought up for review.

Since G. L. 5038 provides that an order of the Public Service Commission shall not be vacated by an appeal, appeals from its orders stand in Supreme Court like cases there on exceptions, and the appeal by one party does not take up the other party's assignments of error.

A failure to brief exceptions amounts to a waiver of them, which cannot be recalled without leave of the court.

Exceptions in hearing before the Public Service Commission are saved in the manner provided by statute (G. L. 1511, 1609) for trials before a chancellor.

In condemnation proceedings, where two or more pieces of real estate, though separated by an intervening fee, are used as one enterprise, and constitute fairly necessary and mutually dependent elements thereof, they are considered a single parcel, and the taking of one necessitates payment for the injury to the others.

In such case, damages are to be assessed by comparing the value of the whole enterprise before the taking with the value of what remains of it after the taking.

The question whether separate parcels of land are used as one enterprise is one of fact, and the burden lies on the owner to establish his claim in such behalf.

On appeal from an order of the Public Service Commission the Court cannot examine the transcript to supply a necessary fact, but it must appear from the commission's findings.

The Court will take judicial notice of the well-known course of business usual in lumber manufacturing enterprises.

Specific findings that a mill was equipped with hardwood machinery and that hardwood was then being cut were not necessary to support a finding that noncontiguous hardwood and softwood parcels of land were parts of a single lumber manufacturing enterprise.

The award of damages was properly arrived at by adding to the value of the land taken the injury to what remained.

APPEAL from an order of the Public Service Commission Essex County. The opinion states the case.

*Dunnett, Shields & Conant* and *R. Y. Fitzgerald* for the petitioner.

Where two parcels of land owned by the same owner are separated by land owned by another, they cannot be considered as one tract where the owner does not possess the right to cross the intervening land, notwithstanding a possible unity of use. 2 Nichols, Eminent Domain, 743; *Pennsylvania Co.* v. *Pennsylvania, etc., R. Co.,* 151 Pa. 334, 25 Atl. 107; *Schmidt* v. *City of Milwaukee,* 149 Wis. 330, 135 N. W. 883; *Cameron* v. *Chicago, etc., R. Co.,* 42 Minn. 75, 43 N. W. 785; *Currie* v. *Waverly, etc., R. Co.,* 52 N. J. L. 392; *Potts* v. *Pennsylvania, etc., R. Co.,* 119 Pa. 278, 13 Atl. 291; *Bergen R. Co.* v. *Point Breeze Ferry & Imp. Co.,* (N. J.) 30 Atl. 584; *United States* v. *Inlots,* Fed. Case No. 15441a; *White* v. *Metropolitan West Side El. R. Co.,* 150 Ill. 620, 39 N. E. 270; *Adams County* v. *City of Quincy,* 130 Ill. 566, 22 N. E. 624, 6 L. R. A. 155; *Holston Salt & Plaster Co.* v. *Campbell,* 89 Va. 396, 16 S. E. 274; *Linn County Bank* v. *Hopkins,* 47 Kan. 580, 28 Pac. 606, 27 Am. St. Rep. 309; *Raxedale* v. *Seip,* 32 La. Ann. 435; *Bolen Coal Co.* v. *Ryan,* 48 Mo. App. 512; *Langlois* v. *Cameron,* 201 Ill. 301, 66 N. E. 332; *Wild* v. *People ex rel. Stephens,* 227 Ill. 556, 81 N. E. 707; *Griffin* v. *Denison Land Co.,* 18 N. D. 246, 119 N. W. 1041; *Anvil Hydraulic & Drainage Co.* v. *Code,* 182 Fed. 205; *Culver* v. *Waters,* 248 Ill. 163, 93 N. E. 747; *In re Sherill,* 188 N. Y. 185, 81 N. E. 124, 117 Am. St. Rep. 841; *Kresin* v. *Mau,* 15 Minn. 119; *Leavenworth, N. & S. Ry. Co.* v. *Wilkins et al.,* 45 Kan. 599, 26 Pac. 16.

Where only part of a tract is taken, other elements in addition to market value need to be considered in order to determine the amount of compensation due the owner of the land. He is entitled to recover not simply the market value of the part taken, but the difference between the market value of the entire tract and the market value of what is left. *Chicago* v. *Taylor,* 125 U. S. 161; *Pittsburg, etc., R. Co.* v. *McCloskey,* 110 Pa. 436, 1 Atl. 555; *Farmers' R. & I. Co.* v. *Cooper et al.,* 54 Colo. 402, 130 Pac. 1004; *Seattle & M. R. Co.* v. *Roeder,* 30 Wash. 244, 70 Pac. 498; *Norfolk & W. R. Co.* v. *Davis,* 58 W. Va. 620, 52 S. E. 724; *Edward et al.* v. *City of Cheyenne,* 19 Wyo. 110, 114 Pac. 677; *Providence & W. R. Co.* v. *City of Worcester,* 155 Mass. 35, 29 N. E. 56; *Savings & Trust Co.* v. *Pa. R. Co.,* 229 Pa. 484, 78 Atl. 1039; Am. & Eng. Enc. of Law, 2d ed., Vol. 10, p. 1164;

*Alabama Central R. Co.* v. *Musgrove,* 169 Ala. 424, 53 So. 1009;
*McDougald* v. *Southern Pac. R. R. Co.,* 162 Cal. 1, 120 Pac. 766;
*In re City of Meriden,* 88 Conn. 427, 91 Atl. 439; *Price* v. *Union
Drainage District,* 253 Ill. 114, 97 N. E. 243; *Glendenning* v.
*Stahley,* 173 Ind. 674, 91 N. E. 234; *Klopp* v. *Chicago, etc., R.
Co.,* 142 Iowa 474, 119 N. W. 373; *Louisville, etc., Ry. Co.* v.
*Wilson,* 165 Ky. 151, 176 S. W. 980; *Rourke* v. *Central Mass.
Elec. Co.,* 177 Mass. 46, 58 N. E. 470; *Minneapolis, St. P. R. &
D. Elec. Traction Co.* v. *Harkins,* 108 Minn. 478, 112 N. W. 450;
*Kennebec Water Dist.* v. *City of Waterville,* 97 Me. 185, 54 Atl.
6; *Kayser et ux.* v. *Chicago B. & O. Ry. Co.,* 88 Neb. 343, 129
N. W. 554; *Wadsworth Land Co.* v. *Charlotte Elec. Co.,* 170 N.
C. 674, 88 S. E. 439; *Cox* v. *Phila. H. & P. R. Co.,* 215 Pa. 506,
64 Atl. 729; *Idaho & W. Ry. Co.* v. *Coey,* 73 Wash. 291, 131 Pac.
810; *Pierce* v. *Chicago, etc., R. R. Co.,* 137 Wis. 550, 119 N. W.
297.

The market value of property taken for public use is the
price which it will bring when it is offered for sale by one who
desires, but is not obliged to sell it, and is bought by one who is
under no necessity of having it. *Sharp* v. *United States,* (C. C.
A.) 112 Fed. 893; *Kansas City R. R. Co.* v. *Fisher,* 49 Kans. 17,
30 Pac. 111; *Cincinnati, I. & St. L. & C. Ry. Co.* v. *Pfitzer* (Ohio)
1 Prob. Rep. 248; *Ligare* v. *Chicago M. & N. R. Co.,* 166 Ill. 249,
46 N. E. 803; *Stewart* v. *Ohio River R. R. Co.,* 38 W. Va. 438,
18 S. E. 604; *Pittsburgh, etc., R. R. Co.* v. *Vance,* 115 Pa. 325,
8 Atl. 764; *Lawrence* v. *City of Boston,* 119 Mass. 125; *Little
Rock Junction R. R. Co.* v. *Woodruff,* 40 Ark. 381, 5 S. W. 792;
*Boom Company* v. *Patterson,* 98 U. S. 403; *Orleans, etc., R. R.
Co.* v. *Jefferson, etc., R. R. Co.,* (La.) 26 So. 278; *Metropolitan
Street Ry. Co.* v. *Walsh,* 197 Mo. 392, 94 S. W. 860; *Esch* v.
*Chicago, etc., R. Co.,* 72 Wis. 229, 39 N. W. 129; *Consolidated
Gas & Elec. Lt. & Power Co of Baltimore* v. *City of Baltimore,*
130 Md. 20, 99 Atl. 968.

The court will take judicial notice of the location and direc-
tion of flow of rivers (*DeBaker* v. *Southern Cal. Ry. Co.,* 106 Cal.
257, 39 Pac. 610; *Winnipisseogee Lake Co.* v. *Young,* 40 N. H.
420; *Boutwells* v. *Champlain Realty Co.,* 89 Vt. 80); of the rules
governing the flow of water (*Bishop* v. *Readsboro Chair Mfg. Co.,*
85 Vt. 141, 153; *Doty* v. *Village of Johnson,* 84 Vt. 15, 22; *Miller
& Lux, Inc.* v. *Enterprise Canal & Land Co.,* 169 Cal. 415, 147
Pac. 567; *St. Louis S. R. Co.* v. *Ellenwood,* (Ark.) 185 S. W.

768) ; of public statutes (*Blood* v. *Morrill,* 17 Vt. 598; *Downer* v. *Woodbury,* 19 Vt. 329; *State* v. *Green,* 87 Vt. 94, 96) ; of the records of the Public Service Commission. *Armstrong* v. *Colby,* 47 Vt. 359; *Dewey* v. *St. Albans Trust Co.,* 60 Vt. 1.

Where there is evidence tending to establish the facts found, neither the court of chancery, nor the Supreme Court on appeal, will review the findings in regard to the weight to be given to the testimony. *Howard* v. *Scott,* 50 Vt. 48; *Merriam* v. *Barton,* 14 Vt. 501; *Bigelow* v. *Middletown Cong. Soc.,* 15 Vt. 370; *Mott* v. *Harrington,* 15 Vt. 197; *Thrall* v. *Chittenden,* 31 Vt. 183; *Vermont and Canada R. R. Co.* v. *Vermont Central R. R.,* 34 Vt. 1, 65; *McDaniels* v. *Harbour,* 43 Vt. 460; *Rowan* v. *State Bank,* 45 Vt. 160; *In re Merrill,* 54 Vt. 200; *Randall* v. *Randall,* 55 Vt. 214; *Waterman* v. *Buck,* 58 Vt. 519, 3 Atl. 505; *Hathaway* v. *Hagan,* 64 Vt. 135, 24 Atl. 131.

The meaning of the word "necessity" in the expression "public necessity," in connection with condemnation proceedings, means expedient, reasonably convenient, or useful to the public, and cannot be limited to the absolute physical necessity. *Warden* v. *Madisonville H. E. R. Co.,* 128 Ky. 563, 108 S. W. 880; *Aurora & G. R. Co.* v. *Harvey,* 176 Ill. 477, 53 N. E. 331; *Charleston Natural Gas Co.* v. *Low,* 52 W. Va. 662, 44 S. E. 410; *McCulloch* v. *Maryland,* 4 Wheat. 414, 4 L. ed. 579; *Gilmer* v. *Lime Point,* 18 Cal. 229, 250; *Greasy Creek Min. Co.* v. *Ely Jellico Coal Co.,* 132 Ky. 692, 116 S. W. 1189.

If by any reasonable construction, a designated use may be held public in a constitutional sense the will of the Legislature should prevail over any mere doubt of the court. *Bankhead* v. *Brown,* 25 Iowa 540; *In re Maderia Irr. Dis.,* 92 Cal. 309, 28 Pac. 272; *Coster* v. *Tide-water Co.,* 18 N. Y. Eq. 54; *Paxton & Hersey Irr. Canal & Land Co.* v. *Farmers' & Merchants' Irr. & Land Co.,* 45 Neb. 884, 64 N. W. 343; *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. 674; *Hodges* v. *Richmond Cedar Works,* (Va.) 91 S. E. 644.

The end to be accomplished must always be the true and ultimate test; and it is quite immaterial that the title and control of the property taken are vested in a private person or corporation, whose actuating motive is private gain. *Ryan* v. *Terminal Co.,* 102 Tenn. 111, 45 L. R. A. 303; *Whitman's Exrs.* v. *Wilmington, etc., R. Co.,* 2 Har. (Del.) 514, 33 Am. Dec. 411; *Willyard* v. *Hamilton,* 7 Ohio, Part II, 111, 30 Am. Dec. 195;

*Bloodgood* v. *Mohawk, etc., R. Co.,* 18 Wend. 9, 31 Am. Dec. 313; *Brown* v. *Beatty,* 34 Miss. 227, 69 Am. Dec. 389; *Valley City Salt Co.* v. *Brown,* 7 W. Va. 191; *Bardstown, etc., R. Co.* v. *Metcalf,* 4 Met. (Ky.) 199, 81 Am. Dec. 541; *Deerfield River Co.* v. *Wilmington P. & P. Co.,* 83 Vt. 548, 553; *Rutland Ry. Co.* v. *Clarendon Power Co.,* 86 Vt. 45.

. *John G. Sargent, Walter S. Fenton, J. Rolf Searles,* and *Alfred S. Hall* for the petitionee.

To make a use public a duty must devolve upon the person or corporation seeking to take property by right of eminent domain to furnish the public with the use intended and the public must be entitled as of right to use or enjoy the property taken. *Rutland Ry., L. & P. Co.* v. *Clarendon Power Co.,* 86 Vt. 45; *Deerfield River Co.* v. *Wilmington P. & P. Co.,* 83 Vt. 548; *Avery* v. *Vermont Electric Co.,* 75 Vt. 235; *Re Barre Water Co.,* 62 Vt. 27; *West River Bridge Co.* v. *Dix,* 6 How. 507, 12 L. ed. 535; *Shasta Power Co.* v. *Walker,* 149 Fed. 568; *Scholl* v. *German Coal Co.,* 118 Ill. 427, 10 N. E. 199, 59 Am. Rep. 379; *Gaylord* v. *Sanitary Dis.,* 204 Ill. 576, 68 N. E. 522, 63 L. R. A. 582, 98 Am. St. Rep. 235; *Chesapeake Stone Co.* v. *Moreland,* 31 Ky. L. Rep. 1075, 104 S. W. 762, 16 L. R. A. (N. S.) 479; *Arnsperger* v. *Crawford,* 101 Md. 247, 61 Atl. 413, 70 L. R. A. 497; *Board of Health* v. *Van Hoesen,* 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114; *Minnesota Canal & Power Co.* v. *Koochiching Co.,* 97 Minn. 429, 107 N. W. 405, 5 L. R. A. (N. S.) 638, 7 Ann. Cas. 1182; *Jenal* v. *Green Island Draining Co.,* 12 Neb. 163, 10 N. W. 547; *Matter of Eureka Basin, etc., Co.,* 96 N. Y. 42; *Matter of Split Rock Cable R. R. Co.,* 128 N. Y. 408, 28 N. E. 506; *Re New York,* 135 N. Y. 253, 31 N. E. 1043, 31 Am. St. Rep. 253; *Borden* v. *Trespalacios Rice & Irrigation Co.,* 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640.

POWERS, J.   This is a proceeding brought to the Public Service Commission pursuant to G. L. 4984, wherein the plaintiff seeks to condemn, for the creation of a storage reservoir, certain property of the defendant in the town of Victory.   Both parties appealed (or attempted to appeal) to this Court pursuant to G. L. 5038.

An appeal from the final order of the Public Service Com-

mission is to be taken and entered in this Court in the same manner as a chancery appeal. G. L. 5038. The latter requires a written motion filed with the clerk within twenty days from the date of the decree appealed from. G. L. 1561. When the appeal is from an order of the commission, the motion is to be filed with it or its clerk, and not with the clerk of the court. *Hyde Park* v. *St. Johnsbury & L. C. R. Co.*, 83 Vt. 562, 77 Atl. 913. These provisions are statutory, and neither the commission (*Hyde Park* v. *St. Johnsbury & L. C. R. Co.*, 84 Vt. 326, 79 Atl. 873), nor this Court (*Gove* v. *Gove's Admr.*, 87 Vt. 468, 89 Atl. 868), has any power to extend the time or modify the requirements.

The record before us shows that the order of the commission was made and filed June 21, 1918. On July 11, 1918, the plaintiff filed with the clerk of the commission its appeal therefrom. On that day, the defendant filed with the clerk of Essex County an appeal from this order, and on the next day, July 12, 1918, it filed an appeal with the clerk of the commission. It thus appears that July 11th was the last day for filing an appeal, and the attempted appeal of July 12th was too late to be effective. It follows that the plaintiff's appeal is properly before us, but that the defendant's will have to be dismissed.

Nor is this result affected by the stipulation filed since the argument of the case, wherein it is agreed that all motions to dismiss the cause from this Court are withdrawn and all grounds thereof waived. The well-established rule that jurisdiction cannot be conferred by waiver, consent, or agreement (*State* v. *Hirsch*, 91 Vt. 330, 100 Atl. 877; *Miner's Exrx.* v. *Shanasy*, 92 Vt. 110, 102 Atl. 480) applies. For, the requirements of a valid appeal being statutory, the jurisdiction of this Court depends upon a compliance therewith, and cannot be conferred by agreement or waiver, express or implied. *Wynn* v. *Tallapoosa County Bank*, 168 Ala. 469, 53 So. 228; *McKenzie* v. *Jensen*, (Ala.) 75 South. 939; *Bolton* v. *Cummings*, 200 Mich. 234, 167 N. W. 19; *Land* v. *Johnston*, 156 Cal. 253, 104 Pac. 449; *John* v. *Paullin*, 24 Okl. 642, 106 Pac. 838; *National Union F. Ins. Co.* v. *Martin*, (N. D.) 170 N. W. 880; *Keyes* v. *Baskerville*, (S. D.) 170 N. W. 143; *Atty. Gen.* v. *Barbour*, 121 Mass. 568; *King* v. *Penn*, 43 Ohio St. 57, 1 N. E. 84; *Perkins* v. *Perkins*, 173 Mich. 690, 140 N. W. 161; *Kenyon* v. *Probate Court*, 17 R. I. 652, 24 Atl. 149; *Humphrey* v. *Employer's Liability Assur. Corp.* 226 Mass. 143, 115 N. E. 253.

It does not of necessity follow, however, that in the circumstances of this case, the defendant is seriously prejudiced by the failure of its appeal. The plaintiff also appealed. So it remains to consider what effect, if any, this fact has upon the defendant's situation. The determination of this question depends upon the character and effect of such appeals.

With us, an appeal in chancery partakes of the nature both of an "appeal" in its full and Civil Law sense, and of a writ of error. Yet it differs from each in essential particulars. It is unlike the former, in that it brings before this Court for review questions of law, only; and it is unlike the latter, in that it brings before this Court for review the whole case. In such appeals, we have nothing to do with the facts, but take them as found below (*Middlebury Electric Co.* v. *Murkland,* 89 Vt. 10, 93 Atl. 291) and sit in error, only. *Steffanazzi* v. *Italian Mut. Benefit Society,* 91 Vt. 538, 101 Atl. 1010, L. R. A. 1918 B, 308. But the decree of the court of chancery is vacated by the appeal, and consequently the whole case is brought up by it; and all exceptions properly saved—those of the appellee as well as those of the appellant—are presented for consideration in this Court. *Cooley* v. *Hatch,* 91 Vt. 128, 99 Atl. 784, and cases cited.

On the other hand, when a bill of exceptions is allowed and filed, the judgment of the court below is not vacated, but remains valid until reversed or annulled. *Snow* v. *Carpenter,* 54 Vt. 17. Therefore the whole case does not come here for review, and only so much of it stands for consideration in this Court as is covered by the assignments of error of the excepting party. *Stratton* v. *Holden & Martin,* 91 Vt. 1, 99 Atl. 272.

The effect upon the judgment below being the determining factor, it is not difficult to say to which of these classes appeals from the Public Service Commission belong. For it is expressly provided by G. L. 5038 that the order of the commission shall not be vacated by the appeal.

It must be held, therefore, that in the respect now under consideration, these appeals stand in this Court like cases here on exceptions, and that the plaintiff's appeal does not bring up the defendant's assignments of error.

We are told that various exceptions were saved by the plaintiff to the admission and exclusion of evidence. These are not briefed, and the plaintiff says that it lost the benefit of them by lack of opportunity to file them with the commission. The

failure to brief these exceptions amounts to a waiver of them, and ordinarily we should say no more concerning them. But lest others be misled, we consider it worth while to refer to the method by which such exceptions are to be saved and presented for consideration in this Court.

The statute requires the commission to state its rulings, when excepted to. G. L. 5036. The procedure whereby such exceptions are saved and brought to this Court is, as we have seen, that of the court of chancery. *Bacon* v. *Boston & Maine R. R.*, 83 Vt. 528, 77 Atl. 858.

There are now two ways of saving exceptions in cases in chancery. If the case is tried before a master, questions as to the admission or exclusion of evidence are not available in this Court, unless saved by exceptions to the report duly filed in the court of chancery. G. L. 1520. If the case is tried before a chancellor, such questions are available on appeal as in cases at law tried by the court (G. L. 1511), and the excepting party has thirty days from the day on which the judgment order is filed in which to file his exceptions. G. L. 1609. Considering the fact that the commission hears the evidence and finds its own facts, therein sitting as a chancellor does in cases tried before him, both alike acting as a court, we think that it was the intention of the Legislature that exceptions in hearings before the commission should be saved in the manner provided by the statute for trials before a chancellor. These parties, then, had thirty days from June 21, 1918, in which to file their exceptions.

This holding does not improve the defendant's situation, for exceptions are brought up to this Court only by force of an appeal, and when the defendant's appeal failed, its exceptions went with it. Nor does it improve the plaintiff's situation, unless the waiver resulting from a failure to brief is neutralized by the stipulation hereinbefore referred to, wherein it is agreed that the exceptions of both parties shall stand for consideration.

Such a waiver cannot be recalled without leave of this Court. It is just as effective as an express waiver, which is binding unless leave is granted to withdraw it. *Fadden* v. *McKinney*, 87 Vt. 316, 89 Atl. 351. It stands like a waiver of objection to evidence, which the court may hold a party to or allow to be withdrawn, in its discretion (*In re Martin's Est.*, 92 Vt. 362, 104 Atl. 100); or a concession of counsel, which is binding until the court exercises its discretion and relieves the party from this effect. *United*

*States* v. *U. S. Fidelity & Guaranty Co.*, 83 Vt. 278, 75 Atl. 280.

No application has been made to this Court to recall the waiver referred to. But treating the filing of the stipulation as such an application, which is the most we can do, we think relief ought to be denied. For reasons already given, the defendant's exceptions cannot be saved to it; and it seems so unfair to give effect to an agreement that. can only operate to the advantage of one party though intended to benefit both, that in the exercise of our discretion we disregard the stipulation and dispose of the case on the record before us.

We have left then, nothing for consideration but the plaintiff's objections to the assessment of damages.

The plaintiff insists that the item of $10,500 on account of increased cost of cutting and marketing the hardwood standing on the east slope of the basin was improperly allowed. In discussing this claim, we will assume that all of this hardwood was standing on land owned by the defendant but wholly separated from the land sought to be taken by lands owned by others. The argument is that it is only contiguous lands that can be considered as one piece in the assessment of damages in condemnation cases, and, inasmuch as the hardwood does not stand on land contiguous to the land taken, nothing can be allowed for its depreciation. While there are cases apparently supporting this claim, and expressions are to be found in our own cases consistent with it, contiguity is not always the controlling question. Generally speaking, the rule contended for by the plaintiff affords a correct basis for the assessment of damages, but it does not in all cases.

Where two or more pieces of real estate, though separated even by an intervening fee, are used as one enterprise, and constitute fairly necessary and mutually dependent elements thereof, they are in the eye of the law a single parcel, and the taking of one necessitates payment for the injury to the others. To state the proposition in its usual form, the damages in such cases are to be assessed by comparing the value of the whole enterprise before the taking with the value of what remains of it after the taking. This rule is recognized in the following cases, some of which are cited by the plaintiff. *Potts* v. *Penn., etc., R. Co.*, 119 Pa. 278, 13 Atl. 291, 4 Am. St. Rep. 646; *Kennebec Water Dist.* v. *Waterville,* 97 Me. 185, 54 Atl. 6, 60 L. R. A. 856; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 37 L. ed. 463, 13 Sup.

Ct. 622; *White* v. *Metropolitan, etc., R. Co.*, 154 Ill. 620, 39 N. E. 270; *Chapman* v. *Oshkosh & Miss. R. R. Co.*, 33 Wis. 629; *Charleston & S. S. Bridge Co.* v. *Comstock*, 36 W. Va. 263, 15 S. E. 69; *Westbrook* v. *Muscatine, etc., R. Co.*, 115 Iowa 106, 88 N. W. 202.

Such parcels can be considered as one only when they are so inseparably connected in the use to which they are devoted that the taking of one necessarily and permanently injures the other. 2 Nichols, Em. Dom. § 241. See also, Lewis, Em. Dom. § 698 *et seq.*

The subject is well covered by a note to *Sharpe* v. *United States,* 57 L. R. A. 932, where the cases are reviewed and the holdings summarized to this effect: Where property is so situated that it is used as a unit, and each part is dependent upon the other, damages for the taking of a particular piece will not be limited to the value of that piece, but will be extended to the whole.

And this is the logic and the justice of it. In no other way can the damages awarded be an "equivalent in money," for in no other way can the owner be made whole for the taking.

We agree with the contention that the question whether these lands were used as one project is one of fact, and that, being *prima facie* separate parcels, the burden lies on the defendant to establish its claim in this behalf. So, unless this fact appears, the award as made cannot stand. Nor can we examine the transcript to supply the fact. *In re Bugbee's Will,* 92 Vt. 175, 102 Atl. 484. It must appear from the findings. That this fact is not expressly found is apparent from an inspection of the commissioner's report. But when its findings are read in the light of the geography of that section and the well-known course of business usual in such enterprises, of which we take judicial notice (15 R. C. L. 1080, 1122), we think it appears as an inference fairly to be drawn from what is shown, and necessary to support the decision below. The defendant's project was on a large scale. It consisted of a large lumber manufacturing plant with machinery and equipment. It was located in the midst of a vast natural basin. Nearly forty million feet of hard and soft timber belonging to the defendant stands on the slopes of this basin, not counting that on the land to be submerged. It is found that so much of this as stands on the west side can be manufactured without additional expense by the

location of a mill on the so-called "Bog Mill site"; that the soft-wood on the east side can be marketed without extra expense by floating it across the proposed lake; but that it will cost more to market the hardwood on the east side on account of flooding the land.  The unmistakable inference from these findings is that a new central plant was contemplated by the commission at which this lumber was to be manufactured, which plant was to take the place of the one heretofore used.  From all this it would be quite reasonable to infer that all these lands were used in connection with the mill as a part of one industry.  Indeed, it would be unreasonable to regard the defendant's property as two separate and distinct enterprises—one a logging enterprise, and the other a manufacturing enterprise.  It sufficiently appears that it was a single undertaking consisting of a mill depending on the timber land for its stock, and a tract of timber depending on the mill for its profitable manufacture.

But it is argued that the findings do not show that th mill was equipped with hardwood machinery so as to make .. available for the manufacture of the hardwood in question.  A sufficient answer to this is that it does not appear that special machinery is required for the manufacture of hardwood.  And if appeal is made to our general information on such subjects; we should reply that the same saw and the same edger are used in the manufacture of hardwood and softwood, and this is as far as the manufacture of hardwood usually goes at mountain mills.  A specific finding on this point was unnecessary.  .

It is further argued that it is not found and did not appear that the defendant is now cutting any of the hardwood on the east side.  But this fact, if it be such, would not of itself prevent the lands being considered a single parcel for the assessment.  Operations on the hardwood on the east side generally may have been interrupted or postponed for one reason or another without affecting the defendant's right to damages, or prevent the east side from being a necessary part of the common enterprise.

Nor was the award rendered illegal by the method by which it was arrived at.  The law measures the damages by the market value rule.  This value is, as claimed, the difference between the value of the entire tract before the taking and its value thereafter.  But the commissioners could properly arrive at this result by adding to the value of the land taken the injury

to what remained. *Board of Education* v. *Corning*, 175 N. Y. Supp. 278. To itemize the damages as the commission has is but another way of stating the difference in the market value before and after the taking. It is evident that this is what the commission intended the result to be.

*Order affirmed, and cause remanded that a new time of payment be fixed and such further proceedings had as may be required not inconsistent with the views herein expressed.*