In re ROME PLANING-MILL CO.

(District Court, N. D. New York. March 5, 1900.)

1. INVOLUNTARY BANKRUPTCY—WHAT CONSTITUTES INSOLVENCY.

An issue as to the solvency of the respondent in a petition in involuntary bankruptcy at the date of the alleged act of bankruptcy must be determined by the question whether the aggregate of his property at that time, exclusive of any property conveyed or concealed in fraud of creditors, was sufficient in amount, at a fair valuation, to pay his debts.

2. SAME—FINDING OF REFEREE.

Where a petition in involuntary bankruptcy is referred to a referee in bankruptcy to find and report on the question whether the respondent was solvent or insolvent at the date of the alleged act of bankruptcy, his conclusion, based on the examination of witnesses as to the extent of the respondent's liabilities and the value of his property, will not be set aside by the court on review, unless plainly contrary to the evidence.

In Bankruptcy.

This matter was before the court on a previous motion to confirm the report of the referee. 96 Fed. 812. Pursuant to the decision then made the matter was referred back to the referee to make a finding upon the question whether or not the Rome Planing-Mill Company was insolvent on the 17th day of October, 1898. On the 8th day of December, 1899, the referee filed a report in which he finds "that on the 17th day of October, 1898, said corporation was insolvent and unable to pay its debts in full and that its assets at a fair valuation were not of sufficient value to pay the debts of the said corporation." Exceptions were filed to this report and the matter is again before the court upon these exceptions and motion to confirm.

Risley & Love, for creditors.

Oswald P. Backus, for alleged bankrupt.

COXE, District Judge. The sole question to be determined is whether the alleged bankrupt was insolvent on the 17th day of October, 1898; if so, an adjudication must follow; if not, the petition must be dismissed. "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts."

Section 1, subd. 15. The total liabilities are agreed upon on all hands to be $10,588. In order to bring the assets to a sum in excess of this figure the plant of the company is placed at $7,107, the accounts receivable at $2,823, the good will at $6,127 and the tools, machinery, stock and materials at $9,167. Manifestly the valuation thus placed upon the real estate is too high. By the terms of the contract under which the company held title the vendor could at any time declare the same forfeited for a breach of its conditions and take possession of the property with all the improvements thereon. As there was a default at the time the judgments were entered this fact should be considered in fixing the value. Indeed, a few days after the judgments were entered the vendor actually took possession under the contract and the creditors obtained nothing from the real estate. The sum of $2,823—debts due the company—is found by the referee to be uncollectible. The good will is conceded to be unavailable as an asset and the tools and machinery are placed at too high a value in view of the sheriff's inventory at $6,463 and the sale at public auction a week later for $3,025. There is testimony that the value of the plant was but $2,800 and the value of the stock but $5,663, but even if the value of the former be fixed at $3,500 and of the latter at $6,500 there would still be insufficient property to pay the debts. The referee has twice examined this question and has had the advantage of seeing and hearing the witnesses. Even if it be admitted that the question of fact is a close one no sufficient reason has been advanced for disturbing his finding. It cannot be denied that the company is hardly in a position to ask that any doubts which may arise shall be resolved in its favor. The judgments obtained by the company's treasurer and his wife have swept away every vestige of property from the general creditors. That this proceeding was in conflict with the spirit of the bankruptcy law cannot be controverted. There should be the usual order of adjudication.