E. P. CRAY *v.* BELLOWS FALLS ICE CO., INC., AND TRUSTEE.

February Term, 1936.

Present:  POWERS, C. J., SLACK, MOULTON, THOMPSON, and
SHERBURNE, JJ.

Opinion filed May 5, 1936.

*Frank E. Barber* for the defendant.

*Carpenter & Clawson* (*Richard E. Gale* of counsel), for the plaintiff.

SLACK, J.   April 1, 1927, plaintiff, who was then in the ice business in North Walpole, New Hampshire, and Bellows Falls, Vermont, and owned an ice house in the former place, then filled with ice, tools used in that business, and the right to cut ice on a pond near his ice house, sold such business, his stock of ice, and tools to defendant, and leased to it his ice house and the right to cut ice on said pond for the term of five years from January 1, 1928, for $500 a year.   These transactions were evidenced by writings of the following tenor:

April 1, 1927

Bellows Falls Ice Co.

To E. P. Cray, Dr.

All ice in house on Cray's Farm in North Walpole, N. H., and all ice tools                    $2155.00
All right to ice business in North Walpole and Bellows Falls, and also agree not to reenter the ice business.

E. P. Cray<br>Received Payt in full to date<br>E. P. Cray

April 1, 1927.

I Eugene P. Cray of North Walpole N. H. do hereby lease beginning Jan. 1, '28 for a term of (5) five years rights to cut ice and rights to ice house below dam on Cray farm in North Walpole, N. H. for the sum of $500 per year.

Eugene P. Cray<br>Bellows Falls Ice Co.

This suit is to recover rent due under the lease. The defendant pleaded the general issue and payment, and filed a declaration in offset which contains the common counts, and a special count, which alleges that under the contract between the parties it was the duty of the plaintiff to keep the dam at the pond, the runway, and the ice house in good and suitable repair during the term of the lease; that he failed and neglected to keep the ice house in repair, and as a result the defendant lost a large part of the ice cut in the winter of 1931; that the balance of the crop was badly damaged, and it was put to other cost and expense. Trial was by jury. Plaintiff introduced the lease and evidence tending to show the amount due under it and rested.

The defendant claimed that the writings above set forth did not fully and accurately state the terms of the contract which the parties made, and that the lease was ambiguous, and offered to show that under such contract it purchased plaintiff's ice business, his stock of ice then on hand, and the tools used in such business, and that plaintiff as part of the consideration for such purchase agreed to keep the pond, dam, runway, and ice house in suitable repair during the term of the lease; that it was also agreed in consideration of such purchase that as a part of the consideration defendant should pay $500 a year for the use of the ice house, runway, and pond, and that it was the intention of the parties not to put the whole agreement in writing, and, subject to plaintiff's exception to the admission of parol evidence tending to vary the terms of the written agreement, was permitted to do so. The evidence so introduced by defendant tended to show what it claimed regarding the agreement to make repairs. It tended to show further that on at least four occasions prior to March 8, 1931, it called plaintiff's attention to certain repairs it deemed necessary and that he directed it to make them or have them made, and in each instance bore all or part of the expense; that in two instances the expense for the repairs which he agreed to bear was paid by defendant and the amount deducted from plaintiff's next rent check without objection by him as far as appeared; that on March 8, 1931, part of the ice house roof fell in; that plaintiff was notified of the fact within a day or two, and agreed to fix it; that about a week later, nothing having been done, defendant saw plaintiff and

offered to make the repairs and deduct the expense from his rent but he said he could do it cheaper; that on April 18, 1931, defendant wrote plaintiff thus: "This is notice to you that in accordance with your agreement and contract of lease made with us of the ice house property owned by you and located in North Walpole, New Hampshire, you are bound to keep the same in suitable and proper repair for use as an ice house." The letter then called plaintiff's attention to his failure to have the roof repaired, the damage that it was causing defendant, and closed with notice that unless plaintiff made the necessary repairs defendant would make them at plaintiff's expense. It appeared that plaintiff made the repairs soon after this letter was written. Defendant also introduced evidence tending to show the nature and amount of the items it sought to recover.

At the close of defendant's evidence plaintiff moved to strike out such of it as tended to vary the written lease on the gounds (1) that the intent of the parties was determined by the lease, (2) that the evidence did not show that the understanding of the parties was that the lease should not, and did not, contain their agreement, (3) that it did not show any independent verbal agreement collateral to the lease made prior to or contemporaneous therewith, (4) that the lease contained no latent ambiguity and therefore was not open to explanation by parol evidence, and (5) that there was no evidence that the lease was procured by fraud.

The defendant objected to the granting of such motion on the grounds that the evidence showed that the parties did not intend to reduce the entire contract to writing and therefore parol evidence was admissible to show that it was the duty of plaintiff to make the repairs; that the case was not governed by the principles applicable to landlord and tenant, in general, because the lease and contract of purchase were part of the entire transaction and must be construed together; that the purchase price of the business, etc., was paid upon plaintiff's express promise to keep the ice house, etc., in repair; that the evidence showed that under the construction plaintiff placed upon the contract he was bound thereby to make the repairs referred to, and that such was the construction that both parties placed upon it.

■

194

Subject to defendant's exception on each ground stated in its objections to the granting of plaintiff's motion, the same was granted, and the court thereupon directed a verdict for plaintiff and entered judgment thereon, to which defendant excepted.

We first consider defendant's last exception. It is well settled that in determining the meaning of an indefinite or ambiguous contract, the construction placed upon it by the parties may be considered by the court. *Douglass & Varnum* v. *Village of Morrisville,* 89 Vt. 393, 471, 95 Atl. 810; *Kopper* v. *Fulton,* 71 Vt. 211, 44 Atl. 92; *White* v. *Amsden,* 67 Vt. 1, 30 Atl. 972; *Vermont & Canada R. Co.* v. *Vermont Central R. Co.,* 34 Vt. 1; *Barker* v. *Troy & Rutland R. Co.,* 27 Vt. 766, 6 R. C. L. 852, 854, 35 C. J. 1180. While strictly speaking, the lease may not be ambiguous so far as the repairs are concerned because being silent on that subject the plaintiff was by implication absolved from making them, the law being that a landlord is not bound to make repairs unless he agrees to do so, 16 R. C. L. 1031, and cases cited, yet, in the circumstances, we think the rule of practical construction is applicable. The lease, it appeared, was drawn by the plaintiff; it attests his lack of experience as a draftsman; it not only omits all reference to repairs, but it contains no provision respecting the condition in which the premises shall be returned, when the rent shall be paid, and does not even indicate who the lessee is. If the parties to this form of an instrument construe its meaning in a certain way by their conduct extending, as in this case, over a period of four years, they ought not then to be heard to say that it means something different.

The evidence that tended to show how the parties construed the lease, and why, was admissible and should have been submitted to the jury under proper instructions.

It is unnecessary to consider other questions.

*Judgment reversed and cause remanded.*